IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10CV437

| | | |
|---|---|---|
| JORJA PROPERTIES, LLC, a South Carolina Limited Liability Company, and PAUL R. STEADMAN, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| MIDTOWN SUNDRIES ELIZABETH, LLC, a North Carolina Limited Liability Company, and LUTHER G. CAUDLE, | ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the court upon Plaintiffs' Motion for Summary Judgment. Defendants' attorney withdrew from representation and Defendants are unrepresented. Defendant Luther Caudle filed a *pro se* "Declaration" in opposition to the Motion for Summary Judgment, but Defendant Midtown has failed to file a response in opposition. Plaintiffs have filed a "Rebuttal to Defendant Luther G. Caudle's Declaration" and this matter is now ripe for disposition.

Plaintiffs filed this case to recover on a commercial lease. On August 4, 2006, Plaintiff Jorja Properties, LLC ("Jorja") and Defendant Midtown Sundries Elizabeth, LLC ("Midtown") entered into a commercial triple net lease agreement for property in Cornelius, North Carolina where Defendant had operated a restaurant. The term of the lease ran through July 3, 2009. Defendant Caudle is the sole member of Midtown and Plaintiff Steadman is the sole member/manager of Jorja. The lease agreement was signed by Caudle as manager of Midtown.

1

Jorja never required Caudle to execute a personal guaranty.

Pursuant to the lease, Midtown was to pay rent in the amount of $30,000 per month, and was to pay the ad valorem property taxes. Midtown defaulted on these payments and Jorja terminated the lease pursuant to its forfeiture clause in March of 2009. After the termination, however, Jorja continued to accept payments in the amount of $30,000 per month, thereby creating a periodic tenancy. Midtown again defaulted on the rental payments and the ad valorem taxes. On February 19, 2010, Jorja terminated the periodic tenancy by giving Midtown a notice to terminate the lease. Midtown failed to vacate the property and thus became a holdover tenant. Pursuant to the terms of the lease agreement, holdover tenants must pay 150% of the monthly rental rate, or $45,000 per month. Plaintiffs obtained possession of the property on December 7, 2010.

Plaintiff has asserted that Midtown owes $13,568.59 and $24,081.13 for the 2008 and 2009 ad valorem property taxes and $20,974.84 for the pro rata portion of the 2010 ad valorem property taxes, for a total of $58,624.56 in taxes. Midtown also owes $7,000 for a portion of the December 2009 rent, plus $30,000 a month rent from January 2010 through February 2010, for a total of $67,000. Once Midtown became a holdover tenant in March 2010, it owed $45,000 per month from March to November 2010, for a total of $405,000. The pro rata portion of the December rent totaled $10,161.29. After applying all credits to which Midtown is entitled, including the application of the state court Summary Ejectment appeal bond in the amount of $180,000, Midtown remains indebted to Plaintiffs in the amount of $405,785.85.

Defendants have filed a counterclaim against the Plaintiffs for breach of the lease agreement for failure to honor an option to renew the lease at a fair market rental rate, which Defendants assert was substantially less than $30,000 per month. The provision of the lease that

Defendants argue Plaintiffs have breached reads as follows:

> **Option to Renew-Right of First Opportunity:**
> Prior to offering the Premises for let to third parties following the expiration of the Term, Lessor shall first offer to re-lease the Premises to Lessee by delivering notice thereof to Lessee not less than one hundred eighty (180) days prior to the expiration of the Term, with the Fixed Rent during such renewal term to be equal to the then fair market rental value of the Premises ("FMV"), and otherwise on the same terms and conditions set forth herein. Following the receipt by Lessee of such notice, Lessor and Lessee shall negotiate in good faith to determine the FMV of the Premises and, for a period of sixty (60) days following Lessee's receipt of such notice, Lessor shall not offer the Premises to let to any third party. In the event the Lessor and Lessee are unable to agree on the FMV within sixty (60) days of Lessee's receipt of such notice, the right of first offer set forth in this Section shall be null and void and Lessor shall have the right to let the Premises, following the expiration of the Term, to third parties.

The Defendants have not brought forth any evidence that the Plaintiffs offered to rent the premises to any third parties without honoring the right of first opportunity, thus triggering Plaintiffs' obligations under this provision of the lease. Accordingly, this counterclaim must fail.

Plaintiffs are attempting to collect the amounts owed by Midtown from Caudle, even though the lease agreement was with Midtown and Plaintiffs never required a personal guaranty from Caudle. Plaintiffs set forth two theories in support of their argument that Caudle is liable for the amount due. The first theory is that it was the Plaintiffs' "understanding" that Caudle was a party to the periodic lease entered into after Midtown first defaulted. Regardless of what the Plaintiffs "understood," the written lease agreement was executed by Midtown, and Defendant Caudle was not a party to the lease. In the alternative, Plaintiffs seek to pierce the corporate veil of Midtown, which has no assets, and collect the sums owed by Midtown from Caudle. In an action to pierce the corporate veil, and thus disregard the corporate entity, three elements are required:

3

> (1) Control, not mere majority or complete stock control, but complete dominion, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*East Market Street Square, Inc. v. Tycorp Pizza IV, Inc.*, 175 N.C. App. 628, 633, 625 S.E.2d 191, 196 (2006) (citing *Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985)). In *East Market Street Square*, a case involving the breach of a commercial lease, the North Carolina Court of Appeals affirmed the trial court's findings of fact piercing the corporate veil of a corporate tenant organized to operate a franchised restaurant. The corporate tenant was owned by a single shareholder who misrepresented the financial state of his corporations to the landlord. *See Id.* at 639, 625 S.E.2d at 200. Moreover, there was a great deal of evidence that the shareholder completely dominated the corporate tenant such that it had no independent identity of its own. *See Id.* at 634-36, 625 S.E.2d at 197-98. Part of the court's findings as to element two of the mere instrumentality test was that the shareholder made misrepresentations which resulted in damages to the landlord, including damages to the leased premises. *See Id.* at 639, 625 S.E.2d at 200.

In stark contrast to the *East Market Street Square* case, Plaintiffs' evidence as to the three elements is lacking. In support of their claim, Plaintiffs submit evidence that Midtown never filed an annual report with the North Carolina Secretary of State and was dissolved on August 25, 2010. Plaintiffs also submit an excerpt from Mr. Caudle's deposition in which he admits that Midtown has no assets. This is simply not enough evidence for the court to make a finding that Midtown was a mere instrumentality of Caudle. Moreover, the court cannot help but wonder

why Plaintiffs did not require Caudle to sign a personal guaranty. The court will deny summary judgment as to Plaintiffs' second claim at this time, with leave to refile should Plaintiffs be able to submit the type of evidence that the court relied upon to pierce the corporate veil in the *East Market Street Square* case.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment as to their First Claim for Relief is GRANTED as against Defendant Midtown; and

IT IS FURTHER ORDERED that Defendants' claim for breach of the lease is dismissed; and

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment as to its Second Claim for Relief is hereby DENIED at this time, with leave to refile no later than November 30, 2011. This case will be set for trial in the April 2012 trial term.

Signed: September 22, 2011

Graham C. Mullen
United States District Judge